# IN THE COURT OF APPEALS OF IOWA

No. 18-0986
Filed September 12, 2018

**IN THE INTEREST OF E.T.,**
**Minor Child,**

**J.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Steven W. Stickle of Stickle Law Firm, PLC, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Christine D. Frederick of Zamora Taylor Woods & Frederick, Davenport, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

A mother appeals the termination of her parental rights to E.T., born May 2008.[1] On appeal, the mother argues termination under section 232.116(1)(d), (f), (g), and (i) (2018) is not supported by clear and convincing evidence. She also argues she was denied reasonable efforts at reunification and termination is not in the child's best interest.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) was first involved with the family in 2013, when E.T. and his siblings were adjudicated children in need of assistance (CINA) for their mother's failure to keep them safe from physical and sexual abuse, exposure to domestic violence, and homelessness. E.T. and his siblings witnessed E.T.'s biological father assault the mother. E.T.'s biological father was convicted of sexual assault of the mother's oldest child, and both the mother and E.T.'s biological father were found to have physically abused all of the mother's children, including E.T.

In August 2014, new concerns came to light regarding the mother's sobriety and living situation. The mother had trouble maintaining a residence; she moved between friends, family, and shelters without notifying DHS. She struggled with substance abuse and did not engage in treatment when recommended. The mother had voluntarily placed the children with a friend before E.T. and his siblings were adjudicated CINA in October and formally placed with the mother's friend.

---

[1] E.T.'s biological father had his rights terminated previously. E.T.'s legal father, his mother's husband at the time of his birth, is not at issue in this case. The record is unclear whether E.T.'s legal father has retained his parental rights.

In January 2015, the court ordered the children be returned to the care of their mother. E.T.'s half-sibling, J.W., refused to return to her mother's care. The court found she had true fears of returning to her mother's care and placed her in foster care. While in his mother's care, E.T. began exhibiting problematic behaviors at school, earning twelve days of suspension and missing nineteen days of school between January and April. E.T. was reduced to half days at school due to his major behavioral issues. In May, J.W.'s foster parent reported she smelled alcohol on the mother. The mother tested positive for alcohol use.

In August, the mother was discharged from her substance-abuse treatment program for a lack of participation and follow through. DHS made an unannounced visit to test her for alcohol use. While the test was not completed, the mother admitted she had relapsed and had been drinking. The mother was also not consistently taking the children to therapy or school or participating in her own mental-health treatment. Another concern was the mother's paramour, a parolee who also struggles with substance abuse, testing positive for cocaine in August. A safety plan by DHS restricted contact between the mother's paramour and the children. Statements by the children suggest the mother was not following through on the safety plan: E.T. told the guardian ad litem (GAL) the paramour does not stay overnight, then turned to his brother and stated, "Is she the one we are supposed to tell?"

In December, E.T. and his brother were removed. The mother had not reengaged in substance-abuse treatment and her paramour was arrested in her car after a short car chase. Cocaine was found in the vehicle, and her paramour

tested positive for cocaine use. In April 2016, there were new concerns that the mother was assaulted by her paramour.

The mother has been inconsistent in reporting the date she became sober, first saying it was August 28, 2015 then October 31, 2015. A neighbor credibly reported the mother was intoxicated in January 2016. In May, the mother relapsed. The mother has never taken it upon herself to self-report a relapse and only admits to drinking once she is to be tested for alcohol. The mother relapsed again in August. The mother has also been dishonest about attending therapy and picking up her prescribed mental-health medications, reporting she was doing both to family wellness court when the records show she was neither attending therapy nor taking her prescriptions. In November, the district court's permanency review order changed the permanency goal to termination and adoption.

In April 2017, the court dismissed the State's first petition to terminate parental rights for E.T., but it granted the petition to terminate the mother's parental rights as to E.T.'s siblings J.W. and G.W. The court changed E.T.'s permanency goal back to reunification. E.T. gradually transitioned to his mother's custody and was returned to her care on December 8, 2017. A condition of E.T.'s return was that the mother's paramour could not reside in the home until he had completed two drug tests proving his sobriety. He never completed a drug test, despite DHS's efforts to test him beginning in August.

Almost immediately, the mother failed to take full parenting responsibility. She cancelled therapy appointments for E.T. and herself, and E.T. began missing school, exhibiting behavioral issues, and had poor hygiene. E.T. began exhibiting anxious behaviors such as walking on his tiptoes, being distrustful of peers, and

needing to frequently remove himself from the classroom to calm down in a de-escalation room. E.T. reported to his GAL and DHS that he was spending time with the mother's paramour, despite his mother's assertions otherwise. In late January, E.T. and his mother were required to complete a hair stat test. The mother refused; E.T.'s hair tested positive for methamphetamine exposure. In February, the court ordered removal and for reunification services to end. The permanency goal was changed shortly thereafter. After a termination hearing held in May, the court ordered the mother's parental rights terminated.

The mother appeals.

## II. Standard of Review.

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We are not bound by the factual findings of the district court, but we do give them weight—especially when assessing witness credibility. *Id.* "Grounds for termination must be prove[d] by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child." *Id.*

## III. Discussion.

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (f), (g), and (i). The mother contends the requirements of each section were not established by clear and convincing evidence. "We only need to find grounds to terminate parental rights under one of the [sub]sections cited by the district court in order to affirm its ruling." *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002).

Under section 232.116(1)(f), parental rights may be terminated if the court finds all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The first three prongs of section 232.116(1)(f) are not in dispute: E.T. was ten years old at the time of the termination hearing, was adjudicated a CINA in 2014, and had been removed from his mother's custody for sixteen of the last eighteen months at the time of the termination hearing. The mother argues E.T. could have been returned home at the time of termination. She argues she had housing, employment, and a clear record of cooperating with services.

At the time of the termination hearing, the mother did not have utilities at her residence and was behind on rent. E.T. was exposed to methamphetamine while in his mother's care. The mother does not have a record of cooperating with services. She has a record of sporadic engagement in therapy and substance-abuse treatment. The mother has had several relapses during the last three and a half years of services, but she has never self-reported without prompting. She has lied to the court about her sobriety until substance tests confirm her alcohol use. She refused to take a drug test when E.T. tested positive for methamphetamine exposure and continues to have a relationship with her paramour—an active drug user—against DHS recommendations.

During the two months the mother had E.T. in her custody, she failed to take E.T. to his therapy appointments. She told providers E.T. was sick, but E.T. attended school on those days. The mother was also dishonest about her relationship with her paramour. She refused to agree to a safety plan, which was meant to limit contact between E.T. and her paramour until DHS could determine whether he was using drugs. While the mother reported she was no longer in a relationship, E.T. reported he had spent ample time in the paramour's home with the paramour. The district court found the mother was not credible.

E.T.'s school attendance and performance suffered in his mother's custody. He resumed anxious behaviors such as walking on his tiptoes, needing to use the de-escalation room at school multiple times a day, and having trouble behaving appropriately and trusting his peers. E.T. lost weight during his stay with his mother. Once back in foster care, E.T. quickly regained the weight, no longer needed the de-escalation room, and his behavior at school markedly improved.

The mother demonstrated she does not have a safe or adequate home for E.T. and cannot meet his needs. E.T. could not be returned to his mother's care at the time of the termination hearing. We find the State proved the grounds for termination by clear and convincing evidence.

Next, the mother argues she was denied reasonable efforts because the district court's February 2018 removal order directed that all reunification services end.[2] She argues the court made the decision to terminate when it ordered all reunification services to end—four months before the termination hearing—and

---

[2] To the extent the mother raises a due process argument, she did not raise the issue below and we do not consider it here.

that "holding a contested hearing on the [termination of parental rights] petition is insufficient to satisfy due process when the deck has already been stacked by a decision to stop reunification efforts made in the absence of due process." She also argues she was never offered further drug testing once reunification efforts were stopped.

In its removal order, the court did provide for closing visits or "any other services in E.T.'s best interests." A contested permanency review hearing held on February 12 closely followed the removal order. The mother was not present at that hearing but was represented by counsel. The permanency goal was changed. Services were not challenged. The time for the mother to challenge whether reasonable efforts were made has passed. *In re A.N.*, No. 02-1985, 2003 WL 291627, at *3 (Iowa Ct. App. Feb. 12, 2003) (finding the juvenile court did not err in relieving DHS from providing further reunification services when services were not challenged before the hearing changing the permanency goal to termination); *see In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (holding the DHS "has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing"); *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting the demand for services is necessary to preserve error).

The mother received three and a half years of services. A lack of services in the last few months of the case did not impact the outcome of the case; the mother had failed to comply with services for an extended period of time and had demonstrated multiple times she was not able to provide a safe home for E.T. or to meet his needs. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (finding

DHS's failure to provide visitation in the last months before the termination hearing did not affect the outcome of the case). When the court orders DHS to stop providing visitation in the time period before termination, the question is whether the lack of visitation during that time period would have impacted the outcome of the case. *Id.* The court's order discontinuing services days before the permanency review order, without a challenge by the mother, did not affect the outcome of the case.

The mother also argues termination is not in E.T.'s best interest because of the strong bond they share. *See* Iowa Code § 232.116(2). In reaching our conclusion, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* It is apparent that E.T. and his mother share a bond. However, since the beginning of the case in 2014, E.T. has spent only thirteen months in his mother's care and thirty months in foster care. Each time E.T. is returned to his mother's care, she is unable to take care of her or E.T.'s mental-health needs, E.T.'s school attendance declines, and he develops behavioral issues at school. The mother has not demonstrated she can stay sober and provide a safe environment for E.T. Our legislature has limited the period in which parents can demonstrate they are capable of parenting. *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). E.T. deserves permanency and stability. Terminating his mother's parental rights is in his best interest.

We find the State proved the grounds for termination under section 232.116(1)(f) by clear and convincing evidence, the mother was provided reasonable efforts, and termination is in E.T.'s best interests.  We affirm.

**AFFIRMED.**